M. NICHOLAS *et al.*, plaintiffs in error, *vs.* H. H. HOVENOR, guardian, defendant in error.

When an action was brought by the guardian of minors to recover a contract debt, due and dated prior to the 1st of June, 1865, and the defendant introduced evidence under the 14th section of the Act of 1870, showing losses occasioned by the war, and the Court charged, in effect, restricting the case to the provisions of that section, and the jury found the whole amount for the plaintiff, and defendant's motion for a new trial was overruled by the Court below:

*Held,* That the 14th section of the Act of 1870, relative to debts due widows or minors, is exceptional in the application of the general provisions of the Act, and the settlement upon principles of equity therein provided for, is controlled by the decisions of this Court; that to constitute such equity, it must appear that the losses of the defendant were, in some way, the fault of the plaintiff.

Relief Act of 1870.     Before Judge PARROTT.     Dade Superior Court.     November Term, 1870.

Hovenor, as guardian for several minors, sued Nicholas and others upon their joint and several promissory note, dated the 4th of March, 1863, and due one day after date.

On the trial, it was admitted that the note belonged to the minors, and its consideration was shown to be on a specie basis. Nicholas proved that he lost largely by emancipation of his slaves, and other consequences of the war, but did not connect plaintiff or his wards with the losses. The other defendants were shown to have lost less.

The Court charged the jury that, they should settle this claim on principles of equity, taking into consideration the relative loss of property sustained by the plaintiff and defendants, and might find different amounts against the different defendants. He further charged that, no part of the Relief Act of 1870, but the 14th section, applied to this case, though counsel contended that the 6th and 7th sections thereof applied. The verdict was for the full amount of the note, and costs. A new trial was moved for on the grounds, that the verdict was decidedly against the weight of the evidence, and against the first clause of the charge, and that the last

clause was wrong.   The motion was overruled.   That is assigned as error.

R. H. TATUM; D. A. WALKER, for plaintiffs in error. Act must be plainly unconstitutional before declared void: 37 Ga. R., 168, 171, 173 ; Cooly's C. Lim., 182, 184, 185 ; Sedg. Con. L., 482; 38 Ga. R., 350–355.   Georgia quit the Union : 39 Ga. R., 285, 306, 308.   Congress took us back, Relief Law and all : 11 How. R., 185; 39 Ga. R., 298, 300. Legislature controls remedies : Cooly's Con. Lim., 92.   Unless Act violates *words* of Constitution, it is valid : Cooly's Con. Lim., 87, 90, 168, 172, 174; Sedg. Con. L., 180–183–7; Constitution 1868, Art. III., sec. 5; 5 Ga. R., 194, 201; 8 Ga. R., Beall vs. Beall.   Review former decisions of this Court on Stay-laws, *et id omne genus.*

E. D. GRAHAM; W. H. DABNEY, for defendant.

LOCHRANE, C. J.

This was an action brought by Hovenor, as guardian, against Nicholas and others, for the recovery of money due on a note given in renewal of a contract before June, 1865. Upon the trial of the case, the defendants pleaded the Relief Act of 1870, and introduced evidence of losses arising out of the consequence of the war.   The jury found for the plaintiffs, and a motion was made for a new trial, which the Court overruled; and this constitutes the exception of error now before us.

Our brother Walker, who argued the case so ably before us for the plaintiff in error, took a wide field of discussion from the Act of Secession, the war, the legislative and judicial action on the question popularly known as relief, covering in his review the Scaling Ordinance of 1865, and the decisions of this Court in *Cutts vs. Hardee ; Battle vs. Shivers ; Chapman vs. Akin ; Shorter vs. Cobb ; Hardeman vs. Downer ;* and *Bonner vs. Martin ;* the Relief Act of 1868, and legislative resolution, and, finally, the Act of 1870.

We have not time, nor do we hold it to be necessary in this case, in the view we entertain of the character and effect of the fourteenth section of the Act of 1870, excepting from the general operations of that Act, debts due widows and minors, to enter into any elaborate disquisition of the constitutional right of the Legislature to pass such Acts as are now before us; but confine ourselves to the judicial construction and effect of the section recited in its application to the case at bar.

Whether the State, in fact, seceded from the Federal union, and was out, and was brought back as a conquered territory, and her people at the mercy of the conquerors, is not material to our present consideration of the case at bar. A majority of this Court have so held, arriving at the conclusion from different standpoints, by different process of ratiocination. For myself, it would contribute but little to the general information on this subject to express individual views. My own opinion is, that the State tried to secede and failed. In this effort, she defied the powers of the government of the United States to exercise their municipal sovereignty or laws over her, for over four years, and with historic heroism, maintained a government and laws of her own choice, by armies in the field. But in the final failure of her arms, the National government spread over the State the shadow of its flag and symbols of its power, Georgia was conquered in a military view, but restored in a civil. The constitutional compact, at first a compact of compromises and concessions, was re-written by a mailed hand; and the legislation which has kept the State from the exercises of her privileges is not a constitutional argument that they do not exist.

But the legal effect of this argument is, that, being out when the Constitution of 1868 was adopted, we were moulded out of original elements, and our new-born organization placed us without a history in the past that bound us to the constitutional restrictions of the United States. In a word, old things had passed away, and just as Congress received us, with

Nicholas *vs.* Hovenor.

our new constitutional provision, we stand to-day; and, inasmuch as the right had been given to our Legislature by our people (thus originally convened,) to pass these Acts, that right now exists in *propria vigore* and cannot be limited by judicial power within the legitimate scope of its exercise.

Out of this argument arises another, that, inasmuch as the Legislature have passed an Act making losses by the war a set-off to contract debts, that Act is within the power delegated to the people, without limitation by the Legislature; and this Court usurps the prerogatives of the Legislature, in assuming to repeal its provisions by declaring them inoperative.

The Legislature has declared these losses as set-off "lawful." The people have clothed the Legislature with all power, except where they have made limitations; there being no limitation or restriction in this regard, the exercise of the power is constitutionally discharged.

In construing the National constitution, the rule changes. Here all power not limited may be exercised by the Legislature. The sequence is, that Courts cannot declare Acts unconstitutional except in violation of the express words of the constitution. Contrary to the spirit or concealed intention, is not sufficient to invoke the judicial interference; for this would be the substitution of the judgment of the Court for the will of the Legislature.

The Act of 1870, is contrary to no express words and therefore as invoked in this case, will be sustained by the Court—the argument, in substance, being that the right of the plaintiff is not touched by the law, but only another right given to the defendant, growing out of the facts originally either at the time of the contract, or since.

When these questions on the constitutionality of the Act of 1870, come before us we will adjudge the case. In the present instance we will construe one section, and that an exceptional section in the Act. "Nothing in these Acts shall be so construed as to affect any claim due any widow or mi-

nor, contracted prior to June 1st, 1865, but such claims shall be settled upon the principles of equity, taking into consideration the relative loss of property sustained by the plaintiff and defendant."

In the opinion of this Court, the equity principles laid down for the settlement of such debts is controlled by the adjudication of this Court to the effect. " To sustain a plea under the Relief Act of 1868, it must appear that the loss which defendant claims as an equitable ground for reducing the plaintiff's claim was in some way the fault of the plaintiff."

The section under consideration lays down no new rule conflicting with the decision of this Court. Cases of widows and minors are to be settled upon principles of equity. This Court has decided what are the principles of equity. There must be some act, promise or consequence of loss originating in the fault of the plaintiff to constitute an equity.

And with this construction of the fourteenth section, we affirm the judgment of the Court below.